**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| SHERRY C. PULLAM ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | |
| APRIA HEALTHCARE, LLC. ) | Division_____ |
| Serve Registered Agent: ) | |
| The Corporation Company, Inc. ) | |
| 112 SW 7th Street, Ste 3C ) | REQUEST FOR JURY TRIAL |
| Topeka, KS 66603 ) | |
|         Defendant. ) | |

**PETITION FOR DAMAGES**

COMES NOW, Sherry C. Pullam ("Plaintiff"), by and through her undersigned counsel and for her Complaint against Apria Healthcare Group, Inc. ("Defendant"), alleges and states as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Sherry C. Pullam (hereinafter "Plaintiff") is a citizen of the United States, residing in Kansas City, Missouri. At all times pertinent to this Complaint for Damages, was an "employee" within the meaning of the Kansas Age Discrimination in Employment Act (K.S.A. 44-1111, *et seq*.), the Kansas Act Against Discrimination ("KAAD") (K.S.A.44-1001 *et seq.*) and the Age Discrimination in Employment Act ("ADEA") (29 U.S.C.§ 621 *et seq.*).

2. Defendant Apria Healthcare, LLC. (hereinafter "Defendant") is a for-profit corporation organized under the laws of the State of Delaware, and, on information and belief, having its principal executive offices within the State of California; Defendant has been operating and existing continuously within the State of Kansas,

1

employing employees who carry out the company's business in Kansas, conducting ongoing operations and having its registered agent located at: The Corporation Company, Inc., 112 SW 7th Street, Ste 3C, Topeka, Kansas 66606.  At all times pertinent to this Complaint for Damages, Defendant was an "employer" within the meaning of the Kansas Age Discrimination in Employment Act, the KAAD and the ADEA.

3. This is an employment discrimination and retaliation lawsuit based upon and arising under the ADEA.

4. All of the unlawful acts and practices set forth below were committed within Johnson County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

5. At all times pertinent to this complaint, Defendant maintained a location at 6050 Sprint Parkway, Overland Park, KS 66211 where it employed more than fifty (50) employees.

## ADMINISTRATIVE PROCEDURE AND PROCEDURAL POSTURE

6. On or about November 10, 2016, Plaintiff Sherry C. Pullam timely filed a Charge of Discrimination against Defendant with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of Plaintiff's age and unlawful retaliation (attached as Exhibit A and incorporated herein by reference).

7. On or about August 23, 2017 the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit B and incorporated herein by reference).

8. The aforesaid Charges of Discrimination provided the EEOC and KHRC sufficient

opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC and KHRC investigation of Plaintiff's claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

9. Through the filing of Plaintiff's Charges of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in the investigation.

10. Plaintiffs have satisfied all private, administrative and judicial prerequisites to the institution of this action.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11. Plaintiff was employed with Defendant from approximately May of 2011 until approximately July 22, 2016, when her employment was terminated.

12. Plaintiff was hired by Defendant in May 2011 as a Suspended Billing Representative at its 6050 Sprint Parkway, Overland Park, Johnson County, Kansas location. Plaintiff's job title at the time of her termination was National Oxygen Specialist.

13. In September 2013, Plaintiff was promoted to the position of Customer Quality Specialist-Medicare Revenue Confirmation. Plaintiff continued to advance her career with Defendant until early 2016 when Clayton Myers and Hillary Kohout became her manager and supervisor, respectively.

14. In early 2016, after Clayton Myers and Hillary Kohout became managers of Plaintiff, Plaintiff immediately began to be picked on, and Plaintiff was admonished for small things such as coming back from lunch three minutes early, for taking a later lunch

due to a phone conversation with a client, and, upon information and belief, Plaintiff's calls were scrutinized more heavily than those of younger employees.

15. On or about March 15, 2016, Plaintiff was written up by Ms. Kohout for purportedly not following HIPAA procedure after one of her calls was scrutinized by Ms. Kohout.

16. Contrary to what Ms. Kohut stated, Plaintiff *had* followed HIPAA procedure on that call and Plaintiff demonstrated this to Human Resources, but the write-up remained in her file.

17. Plaintiff was well informed as to HIPAA procedures and was even asked on numerous occasions to teach HIPAA regulations and procedures to other employees.

18. Prior to the March 2016 disciplinary write-up, issued to Plaintiff a month after Ms. Kohout became her supervisor, Plaintiff had only been written up once before for a minor infraction five (5) years earlier, in her first year of employment.

19. Plaintiff repeatedly complained to Ms. Kohout about being singled out for scrutiny and picked on and also complained to Ms. Kohout about the March 2016 write-up.

20. In early 2016 after Ms. Kohut became Plaintiff's supervisor, Plaintiff was prevented from receiving promotions for which she applied.

21. Plaintiff's job bids were either held by Ms. Kohut past the due date for job applications or she was given the alleged basis for promotion denials of the HIPAA write-up she received from Ms. Kohut.

22. On or about February 15, 2016, Plaintiff applied for a job through the job bid process and submitted the bid document to Ms. Kohout, for her signature.

23. Ms. Kohout failed to respond to Plaintiff and because of this, Plaintiff reported to Janice, the Human Resources Manager of Defendant, that Ms. Kohout was holding Plaintiff's bid which prevented Plaintiff from applying for the position.

4

24. Though Janice stated she would investigate, two more days passed and the bid was still not signed by Ms. Kohout.

25. Plaintiff once again reported this to Janice and a few days later, Ms. Kohout finally returned the signed bid to Plaintiff, after the bidding process had already closed.

26. In or around March 2016, Plaintiff expressed interest to Ms. Kohout in applying for another bid job.

27. However, Ms. Kohout informed Plaintiff that even if she did apply, Plaintiff probably would not get the job because of the HIPAA write-up she had received.

28. Plaintiff felt that she had been issued the HIPAA write-up by Ms. Kohout to prevent Plaintiff from applying for other positions within the company.

29. In or around July 2016, Plaintiff was instructed to take a three-day training followed by a computerized test.

30. Plaintiff was the only employee at her location who was required to take the test on that day.

31. Upon information and belief, Plaintiff was only the second individual at her location to be required to take the test.

32. Approximately a month before Plaintiff was made to take the test, another employee in her late forties (40s), Stacy Charles, was also made to take the training and computerized test and after failing the test, Ms. Charles was demoted.

33. Plaintiff expressed concerns about taking the test and stated that she did not want to take the test because of her age and because she had been out of school for more than thirty years. In response, Ms. Kohout just laughed.

34. Plaintiff repeatedly expressed to management and employees that she did not want to take the test because of her age and was afraid to do so because of her age.

35. Plaintiff held a good faith belief that the test had a disparate impact on older individuals and because of this informed management that she did not want to take it.

36. During the test, on or about July 15, 2016, Plaintiff encountered several computer issues and reported the same to the training department.

37. Amanda, the Training Manager, also called Plaintiff during the test and criticized her for taking such a long time to complete the test.

38. Plaintiff informed her that she was having a difficult time because of her age.

39. Later that day, Mr. Myers called Plaintiff and stated that it appeared Plaintiff would not complete the computerized test "in time" and therefore that she "did not pass the test."

40. Mr. Myers informed Plaintiff that because she did not pass the test, she would no longer be able to work in her current position, would be moved to another department, and that she should go home for the day.

41. Mr. Myers again called Plaintiff in the evening of July 15, 2017 and informed her that there were "irregularities" in her tests and he informed her that she was accused of altering her test results to cheat on the test.  Mr. Myers referenced one test where Plaintiff scored 100%.

42. Plaintiff did not alter the test results and Plaintiff informed Mr. Myers that she had not altered the test results and did not possess the skill set to be able to alter the test results.

43. Nevertheless, Mr. Myers informed Plaintiff that she was suspended without pay pending an investigation and that he would call Plaintiff back in two days.

44. On July 20, 2016, Plaintiff was called in for a meeting related to the investigation with Janice from Human Resources and the Training manager of Defendant.

45. During this meeting, Plaintiff asked to be able to access her email to prove that she did pass the test but her request was denied. Plaintiff then asked Janice to access Plaintiff's email for her, and Janice stated that she could not access Plaintiff's email.

46. On July 22, 2016, Mr. Myers called Plaintiff and informed her that she was terminated for the alleged misconduct of cheating on her training test by altering the results.

47. Plaintiff again informed Mr. Myers that there was no way she could have altered the results.

48. Several days later, in July 2016, Mr. Myers resigned his position at Apria.

49. Shortly after Plaintiff's termination, she was informed that a class of around eighteen (18) new employees reported for work in Plaintiff's department and that all the employees were younger than Plaintiff, with most being significantly younger.

50. Shortly after Plaintiff's termination, she was informed that numerous other older employees were terminated on or about July 29, 2016.

## COUNT I - DISPARATE TREATMENT AND TERMINATION BASED ON AGE IN VIOLATION OF THE ADEA

51. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

52. Plaintiff's date of birth is ▮▮▮▮ 1963 and she was, at all relevant times, over the age of forty (40).

53. Defendant unlawfully and intentionally discriminated against Plaintiff Sherry Pullam based upon her age, and acted in bad faith by interfering with, recklessly disregarding, and denying her legal rights when they discharged Plaintiff's employment.

7

54. Specifically, Defendant's conduct in violation of the ADEA included:

    -Singling out Plaintiff for discipline and an additional training exercise

    -Denying Plaintiff the opportunity to advance within the company, and

    -Terminating Plaintiff.

55. Plaintiff's age was a motivating factor in Defendant's decision to terminate Plaintiff. At the time of her termination, Plaintiff was the oldest individual in her department.

56. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

57. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

58. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

59. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of Plaintiff and other similarly situated, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from such conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys'

fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### COUNT II - DISPARATE IMPACT AND TERMINATION BASED ON AGE IN VIOLATION OF THE ADEA

60. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

61. Defendant put a policy in to place that required certification for those handling oxygen orders through several days of training and a test. This policy, on its face, appeared to be a neutral policy.

62. Though Defendant's policy appeared to be facially neutral, it in fact resulted in a disparate impact on individuals over the age of forty (40) which resulted in a significant discriminatory pattern of behavior against individuals over the age of forty (40).

63. At the location Plaintiff worked, Stacy Charles and Plaintiff, both over the age of forty (40), were made to take the test, failed the test, and were informed that they would both lose their current positions because of this.

64. As a direct and proximate result of this policy that resulted in disparate treatment, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

65. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation,

increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

66. By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

67. As shown by the foregoing, Defendant's conduct showed complete indifference to or conscious disregard for the rights of Plaintiff and other similarly situated, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from such conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## **COUNT III–RETALIATION IN VIOLATION OF THE ADEA**

68. Plaintiff incorporates the allegations contained in the above-stated paragraphs as though fully set forth herein.

69. During Plaintiff's employment with Defendant, Plaintiff was subjected to retaliation based upon her opposition to the discrimination she faced because of her age, over 40, by Apria's employees, including Clayton Myers, Customer Service Manager and Hillary Kohout, Customer Quality Supervisor.

70. Plaintiff was subjected to this retaliation for reporting being singled out, disciplined, and scrutinized.

71. Plaintiff was subjected to retaliation for opposing the facially neutral policies of Defendant which had a disparate impact on older individuals and therefore created a pattern and practice of discrimination.

72. All actions or inactions of or by Defendant occurred by or through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

73. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

74. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and other similarly situated, entitling Plaintiff to an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from such conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

**Demand for Jury Trial and Designation of Place of Trial**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Sarah Liesen_____
Sarah Liesen    KS# 26988
4051 Broadway, Ste 4
Kansas City, Missouri 64110
Telephone: (816) 301-4056
Facsimile: (816) 463-8449
sliesen@elmlawkc.com

ATTORNEY FOR PLAINTIFF