# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHERRY C. PULLAM,

    Plaintiff,

v.

APRIA HEALTHCARE, LLC,

    Defendant.

Case No. 2:17-CV-02649-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Sherry Pullam filed this suit against Apria Healthcare, LLC, alleging age discrimination and retaliation claims pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. This matter is before the Court on Defendant's Motion to Stay the Case and Compel Arbitration (Doc. 9). Defendant moves to compel Plaintiff to arbitrate her claims pursuant to an arbitration agreement that she purportedly entered into during the course of her employment with Defendant. Plaintiff argues that the arbitration agreement is not valid because she was never made aware of its existence and, therefore, did not agree to it. For the reasons set forth below, Defendant's Motion to Stay the Case and Compel Arbitration is denied.

Also before the Court are Plaintiff's Motion for Leave to File Surreply Memorandum (Doc. 13) and Defendant's Motion for Leave to File Substitute Declaration of Michael Goldsmith in Support of Defendant's Motion to Compel Arbitration (Doc. 15).[1] As neither

---

[1] Defendant attached the unsigned Declaration of Michael Goldsmith (Doc. 12-1) and its accompanying exhibits (Docs. 12-2 through 12-5) to Defendant's Reply in Support of Its Motion to Stay the Case and Compel Arbitration. In her Motion for Leave to File Surreply, Plaintiff argues that Defendant's Reply and Mr. Goldsmith's declaration raise new arguments and evidence that she has not had an opportunity to address. In its Motion for Leave to File Substitute Declaration of Michael Goldsmith, Defendant seeks to substitute a signed version of Mr. Goldsmith's declaration for the unsigned version.

motion is opposed and the time for filing a responsive brief has long since passed with respect to both, the Court grants both motions pursuant to D. Kan. Rule 7.4.[2]

**I.       Standard**

The Federal Arbitration Act ("FAA") reflects both "a liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."[3] The FAA reversed a "longstanding judicial hostility to arbitration agreements," favoring a presumption of arbitrability if an agreement requires arbitration.[4] "If a contract contains an arbitration clause, a presumption of arbitrability arises."[5] "This presumption may be overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[6] Any doubts concerning the arbitrability of a dispute should be resolved in favor of arbitration.[7]

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[8] Thus, the presumption of arbitrability disappears when the parties dispute whether there is a valid and enforceable

---

[2] D. Kan. Rule 7.4 provides: "Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice."

[3] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

[4] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

[5] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (citation omitted).

[6] *LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1299 (D. Kan. 1998) (citing *ARW Expl. Corp.*, 45 F.3d at 1462).

[7] *Id.* (citation omitted).

[8] *Bellman*, 563 F. App'x at 613 (quoting *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003)); *see also Avedon Eng'g., Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997).

arbitration agreement in the first place.[9]  "A court may compel arbitration of a particular dispute . . . only when satisfied that the 'making' of the agreement to arbitrate is not at issue."[10]

When a party moves to compel arbitration and the opposing party disputes the validity of the arbitration agreement at issue, "the court uses a burden-shifting framework similar to that used in deciding summary judgment motions."[11]  "Under this well-settled standard, summary judgment is appropriate if the moving party demonstrates there is 'no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'"[12]  In the context of a motion to compel arbitration, this standard requires the moving party to present evidence demonstrating the existence of an enforceable arbitration agreement.[13]

If the movant makes such a showing, the burden shifts to the non-movant to submit evidence showing a genuine issue of material fact as to the making of the agreement.[14]  A fact is "material" if, under the applicable substantive law it is "essential to the proper disposition of the claim."[15]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[16]  "To demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate, the facts 'must be identified by reference to an

---

[9] *Id.* (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)).

[10] *Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010) (quoting *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).

[11] *Id.*; *see also, e.g.*, *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citations omitted); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) (citations omitted).

[12] *SmartText Corp.*, 296 F. Supp. 2d at 1262 (citing Fed. R. Civ. P. 56(c)).

[13] *Id.* at 1263 (citations omitted).

[14] *Id.* (citations omitted).

[15] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001 (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[16] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

affidavit, a deposition transcript, or a specific exhibit incorporated therein."[17] "In deciding whether the non-movant has identified a genuine issue of material fact for trial, 'the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.'"[18] If the nonmovant demonstrates a genuine issue of material fact as to the making of an agreement, then the district court must hold a trial on the existence of an agreement to arbitrate.[19] "However, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"[20]

## II. Facts

Defendant Apria Healthcare is a provider of medical equipment, supplies, and home healthcare services headquartered in Lake Forest, California. Defendant operates more than 320 branches throughout the United States, including a branch in Overland Park, Kansas, where Plaintiff was first employed beginning in May 2011.

On June 15, 2014, Defendant rolled out to its employees a voluntary, nationwide alternative dispute resolution program it termed the "Apria Workplace Resolutions Program: Mutual and Binding Arbitration Agreement" ("Arbitration Agreement"). The Arbitration Agreement states:

> This [Arbitration Agreement] requires you and Apria to resolve through final and binding arbitration any and all disputes and claims between you and Apria, including but not limited to claims arising

---

[17] *Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010) (quoting *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)).

[18] *Id.* (quoting *Anderson*, 477 U.S. at 255).

[19] *SmartText Corp.*, 296 F. Supp. 2d at 1262 (citing 9 U.S.C. § 4, which provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."); *see also Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) ("If the parties dispute making an arbitration agreement, a jury trial on the existence of an agreement is warranted if the record reveals genuine issues of material fact regarding the parties' agreement.") (citing *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)).

[20] *Rangel,* 2010 WL 781722, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

out of, related to, or connected with your employment or its termination . . .

. . . This Arbitration Agreement means that both you and Apria are bound to use arbitration as the only means of resolving most employment-related disputes . . . and to forego any right either you or Apria may have to a trial by judge or jury on issues covered by this Arbitration Agreement.[21]

In the section titled "Covered Claims," the Arbitration Agreement provides that arbitration is required for

claims for discrimination (including, but not limited to, race, gender, religion, national origin, sexual orientation, age, marital status, medical condition or disability) or harassment, pursuant to the Age Discrimination in Employment Act . . . ; any federal, state or local anti-discrimination laws; . . . [and] claims pursuant to any other federal, state, or local law, ordinance or regulation . . . .[22]

The Arbitration Agreement also contains several provisions relating to a current employee's right to voluntarily opt out of arbitration. The first, in all capital letters, states:

IF YOU ARE EMPLOYED ON THE EFFECTIVE DATE OF THIS AGREEMENT, YOU WILL HAVE 30 DAYS AFTER YOU RECEIVE THIS AGREEMENT TO "OPT OUT" OF ARBITRATION. MORE INFORMATION ABOUT HOW YOU OPT OUT IS DESCRIBED BELOW. HOWEVER, IF YOU DO NOT TIMELY OPT OUT, YOU WILL BE BOUND BY THIS AGREEMENT IF YOU CONTINUE WORKING FOR THE COMPANY AFTER THE 30-DAY OPT OUT PERIOD HAS EXPIRED.[23]

The second provision concerning the right to opt out states:

You have the right to opt out of this Agreement (i.e. not to be bound by it) if you were employed on June 15, 2014, when this Agreement became effective. However, to do this, you must send a written notice of your decision to opt out to Apria by certified mail, and you must do so within 30 days of the date you first receive a copy of this

---

[21] Doc. 10-3 at 3–4.

[22] *Id*. at 5–6.

[23] *Id*. at 4.

5

agreement. Your notice must be post-marked within the applicable 30 days [sic] period and mailed to: Apria Healthcare . . . .[24]

The foregoing provision also includes the mailing address for Apria's Legal Department, to which employees were to send opt-out notices.

Apria informed its employees about the Arbitration Agreement and made it available to them through an online training course. Specifically, on or about June 30, 2014, Defendant enrolled all current employees in Kansas in a mandatory training session called "APR702 Apria Workplace Resolutions NON-CA" ("APR702"), to be completed using Defendant's online training system, called "Learning Central."[25] The purpose of APR702 was to inform employees about the Arbitration Agreement and the process of arbitration conducted through the American Arbitration Association ("AAA"), and to provide them with an electronic copy of the Arbitration Agreement and the AAA's Employment Arbitration Rules and Mediation Procedures.[26]

Defendant submits the sworn declaration of Helena Kohistani, an Apria Project Manager, who states that:

> For each employee enrolled in the training session, Learning Central electronically tracked the date Apria assigned APR702 to the employee, the date and time the employee completed it, and the amount of time the employee spent in APR702. The employee can download the Arbitration Agreement and AAA Rules by clicking on their respective links on the APR702 "resources" menu. The employee acknowledged completion of APR702 and that he or she had received a copy of the Arbitration Agreement and AAA Rules by clicking "Yes" on an acknowledgement screen at the end of APR702. After the employee made the acknowledgements by clicking "Yes," the Learning Central transcript report for APR702 showed a "transcript score" of "100."[27]

---

[24] *Id*. at 8.

[25] Declaration of Helena Kohistani, Doc. 10-2, ¶ 6.

[26] *Id*.

[27] *Id*., ¶ 7.

The third-to-last slide in the APR702 training course concerned the right to opt out, stating:

> If you do not want to take advantage of Apria's Workplace Resolutions Program, you have the right to opt-out of it within 30-days of completing this course. To do this, you must send a written notice of your decision to opt-out, by certified mail, to Apria Healthcare . . . . Your request must be postmarked within 30-days of the date you complete this course.[28]

Defendant contends that Plaintiff completed APR702 on July 15, 2014. More specifically, Ms. Kohistani states:

> Plaintiff Pullam started APR702 at 7:45:04 AM on July 15, 2014, and completed it at 7:51:23 AM the same day, spending a total of seven minutes taking the course. During the training session, Plaintiff Pullam acknowledged that she received the Arbitration Agreement by clicking "Yes" on the acknowledgements screen at the end of the training, which stated: "I acknowledge that I have reviewed APR702 in its entirety. I further certify that I have downloaded and printed copies of APRIA WORKPLACE RESOLUTIONS PROGRAM: Mutual and Binding Arbitration Agreement and AMERICAN ARBITRATION ASSOCIATION: Employment Arbitration Rules and Mediation Procedures, made available through this course. I understand that I can access these documents at any time on HR Connect." This positive acknowledgement is reflected as a "score" of "100" on Learning Central transcript reports for this course . . . and as "progress" of "100%" on Learning Central transcript details for this course . . . .[29]

Attached to Ms. Kohistani's Declaration are what she describes as "relevant excerpts from the Learning Central transcript details for Plaintiff Pullam showing she took APR702 and the corresponding time and date stamps"[30] and "the Learning Central transcript report showing training Plaintiff Pullam completed, including APR702."[31] Although Defendant also purports to attach the "acknowledgement screen for APR702, where Plaintiff Pullam acknowledged she took

---

[28] Doc. 10-6 at 1. This slide also provides the Apria Legal Department address to which opt-out notices were to be sent.

[29] Doc. 10-2, ¶ 11.

[30] *Id*., ¶ 9 (referring to Doc. 10-7).

[31] *Id*. (referring to Doc. 10-8).

7

APR702 and downloaded copies of the Arbitration Agreement and AAA Rules by checking 'Yes,'"[32] the attached exhibit appears to be a screenshot of a slide from the APR702 course and contains no indication that the individual who checked "Yes" was Plaintiff.

Defendant also submits the declaration of Deborah Lien, a Legal Secretary in Apria's Legal Department, who states that she has "checked all the files containing all employee requests to opt out since the Program's initiation. There is no request by Plaintiff Sherry Pullam to opt out of the arbitration provisions of the Workplace Resolutions Program and Arbitration Agreement."[33]

In a sworn affidavit, Plaintiff states that prior to her attorney showing her a copy of the Arbitration Agreement, she had never seen it before.[34] Plaintiff states that she never signed the agreement and was never made aware of its existence while she worked for Apria—she never received a copy by mail, email, in person, or otherwise.[35] Plaintiff states that she was never made

---

[32] *Id.* (referring to Doc. 10-6). Plaintiff disputes that the version of APR702 attached to Ms. Kohistani's declaration is the correct version, arguing that while Defendant's records purport to show that she completed a course titled "APR702 Apria Workplace Resolutions_NON-CA," Ms. Kohistani refers to screenshots from a course titled "APR702 Apria Workplace Resolutions_NON-CA-v2." Defendant counters, through the declaration of Mr. Goldsmith, that there were multiple versions of the Learning Central course at issue, but that the only difference between the course Plaintiff took and the course attached to Ms. Kohistani's declaration is the title. Doc. 15-1, ¶¶ 7–9. Attached to Mr. Goldsmith's declaration is the full slide set for the version of APR702 that Defendant contends Plaintiff took; the opt-out and acknowledgement slides are identical in content to the slides attached to Ms. Kohistani's declaration. *Compare* Doc. 10-6 at 1–3, *and* Doc. 12-2 at 26–28.

[33] Doc. 10-9, ¶ 7. Ms. Lien's declaration states that "employees on the payroll as of June 15, 2014 had 30 days from that date to opt out of the program." *Id.*, ¶ 5. This statement seems to indicate that all opt-out notices would need to be postmarked no later than July 15, 2014. Thus, Plaintiff points out that if she completed the course on July 15, 2014 as Defendant alleges, she would not have had a reasonable period of time to exercise her opt-out right after doing so. Doc. 11 at 10–11. In its reply, Defendant acknowledges a misstatement in Ms. Lien's declaration about the start of the thirty-day opt-out window, and states that Plaintiff knew or should have known that she had thirty days from the date she *received* the Arbitration Agreement to opt out, rather than thirty days from the date of the program's initiation on June 15, 2014. Doc. 12 at 5. As noted above, APR702 does state that opt-out notices must be post-marked within thirty days of completing the course. Doc. 10-6 at 1; Doc. 12-2 at 26. Defendant contends that Plaintiff completed the course on July 15, 2014, meaning her opt-out notice would need to have been post-marked by August 14, 2014. Doc. 12 at 6. Plaintiff does not dispute the fact that she never submitted an opt-out notice.

[34] Doc. 11-1, ¶ 9.

[35] *Id.*, ¶¶ 10–15.

aware of an opportunity to opt out of arbitration, and that had she been provided with the opportunity, she would have done so.[36]

Plaintiff further states that although she regularly took online training courses while employed by Apria, she "never took a Learning Central course related to any Arbitration Agreement."[37] Plaintiff disputes Defendant's contention that she could have completed APR702 in seven minutes, stating that the Learning Central "courses took at least fifteen (15) minutes to complete, but many would take you thirty (30) to forty-five (45) minutes. I am confident no course ever took less than seven (7) minutes."[38] Plaintiff adds that "Learning Central would prevent you from just rapidly scrolling through the pages of a course without reading them, because it would make you spend a certain amount of time on each page."[39]

Plaintiff further states in her sworn affidavit that when she was assigned an online course, she would receive an email telling her that the course had been assigned and giving her a deadline by which to complete it. Her supervisor would also receive a copy of that email.[40] Plaintiff points to Defendant's failure to provide that email as evidence that she never took APR702. Plaintiff also states that if she had not completed an online course as of a few days prior to the deadline, her supervisor would remind her of the deadline and schedule a time for her to complete the course.[41] Thus, Plaintiff argues, it would be extremely unusual for her to be late in completing a Learning Central course, and Defendant's records indicate that she was two weeks late in completing APR702.

---

[36] *Id.*, ¶¶ 16–17.
[37] *Id.*, ¶ 26.
[38] *Id.*, ¶ 22.
[39] *Id.*, ¶ 23.
[40] *Id.*, ¶ 19.
[41] *Id.*, ¶ 20.

In addition to contesting that she took APR702, Plaintiff makes a number of other sworn statements to establish that Apria did not normally communicate with her about matters pertaining to the terms of her employment through Learning Central. Rather, Plaintiff contends that "Learning Central courses generally provided information about how to do my job and the governmental rules that governed compliance. Most of the time they were not about Apria policies."[42] Plaintiff states that when Apria wished to communicate with her regarding its internal policies, such information was "almost always sent to [her] by email or handed to [her] in paper form."[43] She adds: "[o]ften, I would be required to sign the document after reading the policy."[44] Finally, Plaintiff states that the Learning Central courses she took typically did not require her to download documents, as APR702 required with respect to the Arbitration Agreement; rather, the pertinent information would be displayed on the screen.[45]

Plaintiff was terminated from her position on July 22, 2016. She states that at the time she was terminated, she had printouts of the results of all the Learning Central courses she completed during her employment, but was not permitted to take those documents with her.[46]

In response to Plaintiff's affidavit, Defendant submits the declaration of Michael Goldsmith, Apria's Learning Development Manager. Mr. Goldsmith states that he is "responsible for managing the design of Apria's electronic learning courses, and the delivery of those courses through Apria's learning management system, Learning Central."[47] Further, Mr.

---

[42] *Id.*, ¶ 24.
[43] *Id.*, ¶ 25.
[44] *Id.*
[45] *Id.*, ¶ 21.
[46] *Id.*, ¶ 29.
[47] Doc. 15-1, ¶ 4.

Goldsmith's team "is responsible for managing the settings and features of all the Learning Central courses."[48]

Mr. Goldsmith refutes the statements in Plaintiff's affidavit that call into question whether she took APR702. Specifically, Mr. Goldsmith states that Plaintiff would have received an email assigning the course to her because the "Send Assign Training emails" feature was turned on,[49] and that Plaintiff could have taken APR702 as quickly as she wished because the course "did not have the time setting that would have required [her] to view a slide for a certain amount of time before the 'next' button appeared, allowing her to advance to the next slide."[50] He also states that any "alterations or changes to the Learning Central transcript records . . . are preserved in the transcript history," and that Apria did not alter Plaintiff's transcript record for APR702 because if it had, "the Learning Central transcript history would show than an administrator made changes."[51] Mr. Goldsmith states that Plaintiff's "transcript history for APR702 shows that once Apria assigned the course to her, [she] is the only one who affected the transcript records."[52] Attached to Mr. Goldsmith's declaration is an example of what Defendant contends the transcript record would look like if Defendant had "doctored" it.[53]

Defendant also argues that contrary to Plaintiff's assertion, she took multiple Learning Central courses regarding Apria's policies.[54] Defendant points to six specific courses in addition to APR702 out of the hundreds of courses listed in Plaintiff's Learning Central transcript report,

---

[48] *Id.*, ¶ 5.
[49] *Id.*, ¶ 10.
[50] *Id.*, ¶ 11.
[51] *Id.*, ¶¶ 16–17.
[52] *Id.*, ¶ 17.
[53] Doc. 12-5.
[54] Doc. 12 at 3 (referencing Doc. 10-8).

four of which Plaintiff completed. These courses relate to Apria's policies on workplace harassment, its code of conduct, and company benefits.[55]

**III.   Analysis**

"When deciding whether the parties have agreed to arbitrate, the Court applies ordinary state law principles that govern the formation of contracts."[56] The parties here agree that Kansas contract law applies.[57] Under Kansas law, a valid contract requires offer, acceptance, and consideration.[58] "Additionally, in order for parties to form a binding contract, the offer and acceptance must manifest a mutual assent or a 'meeting of the minds' on all the essential terms of the contract."[59] "This 'meeting of the minds' requirement is proved when the evidence shows 'with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract.'"[60]

Whether Plaintiff accepted the Arbitration Agreement is a material fact.[61] In a sworn affidavit, Plaintiff disputes that she took APR702 and, therefore, that she agreed to or was even aware of the Arbitration Agreement. Defendant contends that Plaintiff's assertions about which Learning Central courses she took are "based on her memory" and are "false,"[62] and that to

---

[55] *Id.*

[56] *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[57] Doc. 10 at 6–7; Doc. 11 at 5.

[58] *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1124 (D. Kan. 2015) (citation omitted).

[59] *Id.* (citation omitted); *see also Unified Sch. Dist. No. 446 v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012) ("An unconditional and positive acceptance is required to form a contract.").

[60] *Id.* (citation omitted). Plaintiff's arguments focus on the acceptance required for a valid contract; she makes no argument regarding lack of sufficient consideration.

[61] *See, e.g., Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613–14 (10th Cir. 2014); *Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1264 (10th Cir. 2012); *Kerr v. Dillard Store Servs., Inc.*, Civil Action No. 07-2604-KHV, 2008 WL 2152046, at *3–4 (D. Kan. May 21, 2008).

[62] Doc. 12 at 2.

credit Plaintiff's affidavit, the Court would have to believe that "Apria doctored her Learning Central transcript records."[63] Plaintiff raises the "possibility that someone else scrolled through the course for her."[64]

Contrary to Defendant's assertion, "[a]s long as an affidavit is 'based on personal knowledge and set[s] forth facts that would be admissible in evidence,' such averment of a party is legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature."[65] Plaintiff's affidavit is based on her personal knowledge of the Learning Central courses she took while employed by Apria and the manner in which she customarily took them. Although Defendant offers affidavits and other evidence to the contrary, it is not for the Court to weigh the credibility of conflicting evidence at the summary judgment stage. Rather, "[a]ll evidence must be considered in plaintiff['s] favor at th[e] summary judgment stage . . . and it is for the jury to weigh any conflicting evidence."[66] Because Plaintiff raises a genuine issue of material fact as to the formation of a contract, Defendant is not entitled to arbitration as a matter of law.[67] Rather, this matter shall proceed summarily to a jury trial limited to the issue of the

---

[63] *Id.* at 4.

[64] Doc. 13-1 at 14.

[65] *See Williams v. Shields*, 77 F. App'x 501, 503 (10th Cir. 2003) (internal citation omitted) (reversing summary judgment for defendant where plaintiff's affidavit concerning the date of his release from jail, which was based on personal knowledge, conflicted with defendant's electronic evidence of release date); *see also* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge.").

[66] *Bain v. Platinum Realty, LLC*, Case No. 16-2326-JWL, 2018 WL 862770, at *3 (D. Kan. Feb. 14, 2018); *see also, e.g., Electri-Rep, Inc. v. Zurek*, Case No. 15-9127-JAR-GEB, 2016 WL 5871827, at *5 (D. Kan. Oct. 7, 2016) (citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1022 (10th Cir. 2007)) ("The Court may not make credibility determinations or weigh the evidence at the summary judgment stage."); *Davis v. Seiter*, No. Civ. A. 96-3316-KHV, 1998 WL 404354, at *8 (D. Kan. June 30, 1998) (citation omitted) (stating that material factual disputes cannot be resolved based on conflicting affidavits and that the court must view the evidence in the light most favorable to the party opposing summary judgment).

[67] The United States District Court for the District of Maryland has reached the same conclusion in a case involving the same Apria arbitration agreement and very similar facts. *Whitten v. Apria Healthcare Group., Inc.*, No. PWG-14-cv-3193, 2015 WL 2227928, at *4 (D. Md. May 11, 2015). The date the plaintiff in that case was alleged to have completed APR702 was also July 15, 2014. *Id.* at *2.

existence of an agreement to arbitrate. Section 4 of the FAA permits the Court to decide the issue if Plaintiff does not demand a jury trial.[68] Thus, as set forth below, Plaintiff shall inform the Court whether she requests a jury trial on the existence of an arbitration agreement.

However, should it be determined at trial that Plaintiff did take APR702, the Court will order the parties to proceed with arbitration in accordance with the terms of the Arbitration Agreement. APR702 would have provided Plaintiff with a copy of the Arbitration Agreement and informed her of the manner and time period in which she was required to opt out. In determining whether a plaintiff's failure to opt out of an arbitration agreement amounts to assent, this court has previously examined whether the plaintiff had adequate notice of the terms and conditions and a meaningful opportunity to opt out.[69] Adequate notice may depend upon whether the defendant provided the arbitration agreement in a manner "regularly used to communicate with [the] plaintiff."[70]

Although Plaintiff argues that Defendant did not normally communicate with her through Learning Central regarding matters relating to her employment, Defendant has produced undisputed evidence that Plaintiff took hundreds of Learning Central courses. Although it is true that the bulk of these courses related to how Plaintiff was to perform her job rather than the terms of her employment, Plaintiff does not dispute that she was assigned courses relating to Defendant's policies on workplace harassment, its code of conduct, and company benefits. Although Plaintiff contends that she was typically provided with employment-related information in written form, she cites no specific examples.

---

[68] 9 U.S.C. § 4 ("If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue.").

[69] *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1137–39 (D. Kan. 2015).

[70] *Id.* at 1138.

The Court finds no genuine issue of material fact as to whether Defendant regularly used Learning Central as a means to convey information to its employees and finds that if it is shown that Plaintiff actually took APR702, that course provided both reasonable notice of the Arbitration Agreement and a meaningful opportunity to opt out. Specifically, the sole purpose of APR702 was to provide employees with information about and a copy of the Arbitration Agreement, and it stated in no uncertain terms that an employee had the right to opt out within thirty days of completing the course by sending a written notice, by certified mail, to Apria's Legal Department.[71] The Arbitration Agreement itself—which employees were required to acknowledge receiving in order to complete APR702—unequivocally states that if an employee fails to timely opt out, she will be bound by the agreement if she continues working for Apria after the thirty-day opt-out period has expired.[72]

Plaintiff does not argue that these provisions are confusing or ambiguous, or that a thirty-day opt-out period is insufficient. Rather, she suggests that even if it can be shown that she did take APR702, she should not have had to download the Arbitration Agreement to view it (because that was not typical of Learning Central courses), and that Defendant's records suggest that she did not spend sufficient time viewing the slides to read and understand the material and attachments.[73] The Court finds these arguments unpersuasive, as it would have been within Plaintiff's control to spend the time necessary to download documents and understand her rights, when those rights were communicated to her through a system Defendant regularly used to relay information to its employees. Thus, if it is established that Plaintiff took APR702, the question

---

[71] Doc. 10-6 at 1; Doc. 12-2 at 26

[72] Doc. 10-3 at 4, 8.

[73] Doc. 13-1 at 12–14.

of Plaintiff's assent through her failure to opt out will also be decided and the parties shall proceed to arbitration.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Surreply Memorandum (Doc. 13) and Defendant's Motion for Leave to File Substitute Declaration of Michael Goldsmith in Support of Defendant's Motion to Compel Arbitration (Doc. 15) are **granted**. Defendant's Motion to Stay the Case and Compel Arbitration (Doc. 9) is **denied**.

**IT IS FURTHER ORDERED** that this matter shall proceed to trial on the existence of an agreement to arbitrate on a date to be determined.

**IT IS FURTHER ORDERED** that no later than October 26, 2018, Plaintiff shall file a notice informing the Court whether she requests a jury trial of this matter.

**IT IS SO ORDERED.**

Dated: October 15, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE